IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID ROTH, On Behalf of Himself and All Others Similarly Situated, ) ) ) Plaintiffs, ) ) v. ) ) ) AON CORP., Patrick Ryan, Michael ) O'Hallerhan, and David Bolger, ) ) Defendants. ) | Case No. 04 C 6835 <br><br> HONORABLE CHARLES R. NORGLE |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). On March 24, 2005, the court named the Monroe County Employees Retirement System, Teamsters Local 408 Pension Fund, Western Pennsylvania Electrical Employees Pension Fund, and Hawaii Reinforcing Iron Workers Pension Trust Fund (the "Funds") as the lead plaintiffs in this action. Plaintiffs bring this Class Action Complaint against Defendants alleging violations of Sections 10(b) and 20(a) of the 1934 Securities Act. For the following reasons, Defendants' Motion to Dismiss is denied.

### I. BACKGROUND

**A. Facts**

This case arises out of purported illegal corporate actions taken by Defendants Aon Corporation ("Aon"), and individual directors during the time in question. Aon is the world's largest reinsurance broker and second largest insurance broker. The Class Plaintiffs ("Plaintiffs") allege that

1

Aon, as well as former CEO Patrick Ryan ("Ryan"), and current CEO Michael O'Halleran ("O'Halleran") mislead investors and the market about Aon's financial status and business performance. Furthermore, Plaintiffs claim that Aon failed to disclose the actual revenue Aon received from its insurer-broker contingent commission program. According to the Plaintiffs, this failure to disclose certain revenue, coupled with certain allegedly misleading statements, caused Aon's stock to drop over 30 percent.

Additionally, Plaintiffs claim that Aon utilized undisclosed "contingent commission" plans, which required insurance companies to make payments to Aon for, among other things, the amount of business Aon's clients placed with a specific insurance company, and how many of Aon's clients renewed policies with that insurance company. Plaintiffs further allege that Aon steered business to preferred clients and manipulated bids for its own benefit. Moreover, Plaintiffs claim that Aon misrepresented its revenues and income by stating that the company's growth was due to "continued client demand" for Aon's products, as well as "new business development," as opposed to the influx of contingent commission fees. According to Plaintiffs, if Aon stated that twenty-five percent of its revenue came from these contingent commission agreements, the stock's earnings per share would have dropped significantly. It was only after the class period did Defendants disclose that contingent commission revenue had no basis in any services, and was simply "pure-profit," without any cost. Plaintiffs claim that without this cost-free income, Aon would have missed the market's earning's expectations during the Class Period, which would render Aon's earnings per share figures false and misleading.

## B. Procedural History

On October 25, 2004, Plaintiffs filed their initial Complaint. Then, on March 24, 2005, the

2

court designated the Funds as the lead Plaintiffs in this action. On May 26, 2005, the Plaintiffs filed their Consolidated Complaint in the lead case. On August 1, 2005, Defendants filed their Motion to Dismiss. Plaintiffs Responded on September 22, 2005, and Defendants Replied on October 21, 2005. Defendants' Motion to Dismiss is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

#### *1. Rule 12(b)(6)*

When reviewing a motion to dismiss under Rule 12(b)(6), the court merely looks at the sufficiency of the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Johnson v. Rivera, 272 F.3d 519, 520-21 (7th Cir. 2001); it does not decide whether the plaintiff has a winning claim. See McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000) (analyzing Leatherman v. Tarrant County, 507 U.S. 163 (1993) and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983); Alliant Energy Corp. v. Bie, 277 F.3d 916, 919 (7th Cir. 2002) ("A complaint need only state the nature of the claim, details can wait for later stages"). Thus, "[a] complaint should not be dismissed for failure to a state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." Szumny v. American General Finance, 246 F.3d 1065, 1067 (7th Cir. 2001) (citations and internal quotation marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims ... Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Id. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512. All well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. See, e.g., Sprint Specturm

3

L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004).

### 2. *Rule 9(b)*

Rule 9(b) provides that, "the circumstances constituting fraud or mistake shall be pled with particularity." FED. R. CIV. P. 9(b); see Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 641 (7th Cir. 2002). "The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless." Fidelity Nat'l Title Ins. Co. of New York v. Intercountry Nat'l Title Ins. Co., 412 F.3d 745, 749 (7th Cir. 2005) (internal citations omitted). In securities fraud cases, Rule 9(b) "requires that the essential element of scienter be pled with a sufficient level of factual support: 'the complaint... must afford a basis for believing that plaintiffs could prove scienter.'" In re HealthCare Compare Corp., 75 F.3d 276, 281 (7th Cir. 1996). With these principles in mind, we turn to Aon's Motion to Dismiss.

### B. Aon's Motion to Dismiss

#### *1. Plaintiffs' Claims under §§ 10(b) and 20(a) of the Securities Exchange Act*

Rule 10b-5, enacted under Section 10(b) of the Securities Exchange Act of 1934 "prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5; In re HealthCare Compare Corp., 75 F.3d at 281. Under § 10b of the Act and Rule 10b-5, "a plaintiff can obtain damages if she can prove: (1) the defendant made a false statement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff justifiably relied, and (6) that the false statement proximately caused the plaintiff damages." Makor Issues & Rights, Ltd. v. Tellabs, Inc., - - F.3d - -, 2006 WL 172142, *4 (Jan. 25, 2006 7th Cir.); see 15 U.S.C. § 78u-4(b)(1). The statute "insists that securities fraud complaints specify each misleading statement... and that they 'state with particularity facts giving rise to a strong

4

inference that the defendant acted with the required state of mind.'" Dura Pharmaceuticals, Inc. v. Broudo, 125 S.Ct. 1627, 1633 (2005). The relevant question is "whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the statement or omission." Makor Issues & Rights, Ltd., - - F.3d at - - , 2006 WL 172142, *5 (citing Novak v. Kasaks, 216 F.3d 300, 314 n.1 (2d Cir. 2000)).

Here, Plaintiffs allege that Defendants "carried out a plan, scheme, and course of conduct which was intended to . . . deceive the investing public. . . regarding Aon's business, operations, financial results and the intrinsic value of Aon's publicly traded securities. . . ." Compl., ¶ 239. To support their claim, Plaintiffs submitted several e-mails, memos, and other documents drafted by Defendants that support their theory of Defendants' direct involvement in the alleged scheme. In addition, Plaintiffs claim these documents are evidence of the Defendants supposed intent to defraud investors, through the use of the contingency commission and steering schemes, as well as the individual Defendants' alleged failure to adequately disclose the revenue received from the contingent commission fees. See Compl., ¶¶ 54-104; Ex. 3. Furthermore, Plaintiffs submit various press releases and conference calls with analysts wherein Defendants stated that Aon's growth was a result of "continued client demand for our products and services" and "new business development and better retention rates," yet allegedly did not inform investors that 25 percent of revenue was a result of Aon's contingency commission fees. See Compl., ¶¶ 105, 109, 112, 117, 132, 145.

In contrast to these statements, Plaintiffs then submit a statement made on October 28, 2004 by Defendants stating that the contingent commission revenue was "pure profit item" with 100% margins, and that eliminating these revenues was "a dollar to dollar hit to the pre-tax income line." Id., ¶ 163. As a result, Aon claimed it had to "withdraw [their] prior guidance relating to the $2.20 earnings per share objective." Id. In other words, Plaintiffs claim that if Aon had not included the contingent

5

commission fees in its estimates, it would have missed the market's earning's expectations, which would render the stock's earnings per share figures false and misleading. Plaintiffs allege that Aon's failure to inform investors of the revenue generated from the contingency commission fees resulted in an inflated stock price, which mislead investors as to Aon's actual financial condition. This caused investors to lose money based on Aon's misrepresentations. See Compl., ¶¶ 164, 167; Pl.'s Resp., at 23-24.

The court finds that the facts alleged by Plaintiffs are "sufficient to support a reasonable belief as to the misleading nature of the statement or omission." Makor Issues & Rights, Ltd., - - F.3d at - -, 2006 WL 172142, *5. In regards to Defendants' claim that Plaintiffs have not adequately pled the scienter requirement with particularity, the court notes that the "text of the statute [§ 78u-4(b)(2)] states only that the complaint must support 'a strong inference' of scienter." Id. at *12. Without more guidance from the statute, "we conclude that the best approach is. . . to examine all of the allegations in the complaint and then decide whether collectively they establish such an inference." Id. Therefore, based on the totality of the Complaint, in addition to the vast number of documents submitted in support of the fraud claims, the court finds that Plaintiffs have, at the minimum, established a "strong inference," as required under the statute. See id. The court will "allow the complaint to survive if it alleges facts from which, if true, a reasonable person could infer that the defendant acted with the required intent." Id. at *12.

Because the court is faced with two competing inferences, "it is inappropriate. . . to make a determination as to which inference will ultimately prevail, lest we invade the traditional role of the fact finder." Id. (quoting Pirraglia v. Novell, Inc., 339 F.3d 1182, 1188 (10th Cir. 2003)). Here, given the evidence in the record, a reasonable person could find that Defendants acted with the requisite intent to defraud its shareholders. As a result, the court cannot dismiss the Complaint at this stage in

6

the litigation. At the close of discovery, the parties may address the issues raised in their briefs on "summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 2-2-06