UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID ROTH, On Behalf of Himself and All Others Similarly Situated, | ) <br> ) <br> ) |
| Plaintiffs, | ) Lead Case No. 04 C 6835 <br> ) <br> ) |
| v. | ) Honorable Charles R. Norgle <br> ) |
| AON CORPORATION, PATRICK G. RYAN, MICHAEL D. O'HALLERAN, and DAVID P. BOLGER, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## AMENDED OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Plaintiffs' Motion for Class Certification, brought pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(c)(1). Lead Plaintiffs Monroe County Employees Retirement System ("Monroe"), Teamsters Local 408 Pension Fund ("Teamsters"), Western Pennsylvania Electrical Employees Pension Fund ("Western"), and Hawaii Reinforcing Iron Workers Pension Trust Fund ("Hawaii"), move the court for an Order certifying this case as a class action, and certifying Monroe, Teamsters, Western, and Hawaii as representatives of the class and their counsel of record as class counsel. For the following reasons, the Motion is granted.

1

# I. BACKGROUND

## A. Facts

Members of the proposed class in this case are persons and entities who purchased or otherwise acquired Aon's publicly traded securities between May 5, 2003 through October 13, 2004 (the "Class Period"). Defendants are Aon Corporation, Patrick G. Ryan (Aon's Chief Executive Officer and Chairman of the Board during the Class Period), Michael D. O'Halleran (Aon's President and Chief Operating Officer during the Class Period), and David P. Bolger (Aon's Executive Vice President, Chief Financial Officer, and Chief Administrative Officer during the Class Period).

Plaintiffs allege that during the Class Period, Defendants violated various provisions of the Securities Exchange Act of 1934 by deliberately or recklessly misleading the investing public about Aon's financial condition. Specifically, Plaintiffs allege that Defendants engaged in fraudulent "contingent commission," "clawback," and "bid-rigging" schemes, issued false and misleading statements, and omitted material facts about Aon's business practices. Consolidated Compl., ¶¶ 54-104. Plaintiffs further allege that this fraudulent conduct artificially inflated Aon's stock price to a high of $29.44 per share during the Class Period, and at the end of the Class Period, when Defendants' fraudulent conduct was revealed, Aon's stock price dropped by $8.35 per share over four days of trading. Id., ¶¶ 226-28. Thousands of similarly situated investors allegedly suffered substantial damages as a result of this precipitous drop in Aon's stock price.

## B. Procedural History

On October 25, 2004, Plaintiffs filed their initial Complaint. Then, on March 24, 2005, the court designated Monroe, Teamsters, Western, and Hawaii as the lead Plaintiffs in this action. On May 26, 2005, the Plaintiffs filed their Consolidated Complaint in the lead case. On August 1, 2005, Defendants filed their Motion to Dismiss. The court denied the Motion to Dismiss on March 2, 2006.[1]

Plaintiffs filed their Motion for Class Certification on May 12, 2006. Defendants filed their Memorandum in Partial Opposition to Plaintiffs' Motion for Class Certification on August 11, 2006. Defendants acknowledge that the court should certify a class in this case, but assert that the Class should exclude those individuals and entities who both bought and sold Aon stock prior to the disclosures of alleged wrongdoing. Plaintiffs filed their Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification on September 8, 2006. Plaintiffs argue that the Class should include all individuals and entities who were damaged by Aon's alleged wrongdoing during the Class Period. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

It is established law in the Northern District of Illinois and the Seventh Circuit that class certifications are the preferred method of dealing with securities fraud cases. "In Helfand v. Cenco, Inc., 80 F.R.D. 1, 5 (N.D. Ill. 1977), this court recognized that there is a strong policy

---

[1] The court notes that it also has before it the companion case of Smith v. Aon, No. 04 C 6875. In that case, Plaintiffs allege that Aon has violated various provisions of the Employee Retirement Income Security Act ("ERISA"). On April 12, 2006, the court denied Defendants' Motion to Dismiss. A Motion for Class Certification in that case remains under advisement.

3

favoring class certification in securities fraud cases." Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986). "[The Seventh Circuit's] policy is to favor maintenance of class actions. This policy operates just as surely in cases where securities fraud is charged." King v. Kansas City Southern Industries, Inc., 519 F.2d 20, 26 (7th Cir. 1975) (internal citations omitted). When considering a motion for class certification, the court must not address the merits of the case. "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974). "'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" Id. at 178 (quoting Miller v. Mackey International, 452 F.2d 424 (5th Cir. 1971)).

In order to demonstrate that class certification is appropriate in this case, Plaintiffs must satisfy all four requirements of Federal Rule of Civil Procedure 23(a). Williams v. Chartwell Fin. Servs., 204 F.3d 748, 760 (7th Cir. 2000); Johnson v. Mercury Fin Co., 189 F.R.D. 363, 367 (N.D. Ill 1999). These requirements are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); Williams, 204 F.3d at 760; Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 183 (N.D. Ill. 1992). Plaintiffs must also demonstrate that one of the requirements of Rule 23(b) is satisfied. Williams, 204 F.3d at 760; Scholes, 143 F.R.D. at 183. In this case,

4

Plaintiffs assert that the requirements of Rule 23(b)(3) are satisfied: "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); Williams, 204 F.3d at 760; Scholes, 143 F.R.D. at 183.

### 1. 23(a)(1): Numerosity

Plaintiffs need not "state with certainty the exact number of class members, [but] they are required to base their estimate on more than mere speculation." Fry v. UAL Corp., 136 F.R.D. 626, 630 (N.D. Ill. 1991) (citing Marcial v. Coronet Ins. Co., 880 F.2d 954 (7th Cir. 1989)). In cases involving nationally trades shares of stock, an estimate of the number of shares traded can satisfy the numerosity requirement. Fry, 136 F.R.D. at 630 (citing Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030 (5th Cir. 1981)). Classes of twenty-five to fifty persons are sufficiently numerous to warrant certification. See Riordan, 113 F.R.D at 62 (indicating that a class of twenty-nine persons was sufficient); Helfand, 80 F.R.D. at 5 (a class of twenty-five to fifty persons was sufficient).

### 2. 23(a)(2)-(3): Commonality and Typicality

The commonality requirement is not difficult to meet. In fact, this requirement "has been characterized as a low hurdle, easily surmounted." Scholes, 143 F.R.D. at 185. The Seventh Circuit has indicated that "[t]he fact that there is some factual variation among the class grievances will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992) (internal citations omitted). In other words, this requirement is satisfied if there is a "common question which is at the heart of [the] case." Id. at 1018.

5

The typicality requirement is "closely related" to the issue of commonality. Id. "We have previously stated that a 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" Id. (quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)). Courts are directed to "liberally construe" the typicality requirement. Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339, 344 (N.D. Ill. 1978). The class members' claims therefore need not be identical to meet this requirement. Scholes, 143 F.R.D. at 185.

### 3. 23(a)(4): Fairness and Adequacy of Representation

To satisfy the final requirement of Rule 23(a), "the representative parties [must] fairly and adequately represent the class." Rosario, 963 F.2d at 1018. This requirement breaks down into the following two components. First, "the class representative [should] not have interests antagonistic to those of the class." Scholes, 143 F.R.D. at 186; Rosario, 963 F.2d at 1018 ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."). Second, the class representatives must be willing and able to "vigorously pursue the litigation on behalf of the class," and the attorneys they have chosen to represent the class must be "qualified, experienced and able to conduct the litigation." Scholes, 143 F.R.D. at 186.

### 4. 23(b)(3): Predominance and Superiority

In order for a class to be certified under Rule 23(b)(3), it must meet two requirements beyond those listed in Rule 23(a): common questions of law or fact must "predominate over any questions affecting only individual members," and class certification must be "superior" to other methods of resolving the case. FED R. CIV. P. 23(b)(3); Amchem Prods. v. Windsor, 521 U.S.

591, 615 (1997). Courts have indicated that the "predominance" requirement of Rule 23(b)(3) is a more stringent requirement than the "commonality" requirement of Rule 23(a).

> Determining whether [issues] common to the class predominate over individual issues requires that the court inquire how the case will be tried. This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.

O'Sullivan v. Countrywide Home Loans, 319 F.3d 732, 738 (5th Cir. 2003). In other words, "predominance is concerned with whether the putative named plaintiffs can, through their individualized cases, offer proof on a class-wide basis." Hyderi v. Wash. Mut. Bank, FA, 235 F.R.D. 390, 398 (N.D. Ill. 2006).

Certifying a class is the "superior" way to resolve a case where the "'class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" See Amchem, 521 U.S. at 615 (quoting Adv. Comm. Notes, 28 U.S.C. App., at 697); Scholes, 143 F.R.D. at 189 ("Equally important, judicial economy and efficiency, as well as consistent judgments, are achieved by certifying the class.").

### 5. *"In-and-Out" Traders and Class Action Securities Fraud Cases*

In the context of securities fraud cases, "in-and-out" traders are those persons or entities who both bought and sold their shares before a company allegedly violating securities laws publicly disclosed the violations. See In re Tyco Int'l, Ltd. Multidistrict Litigation, 236 F.R.D. 62, 70 (D. N.H. 2006); In re BearingPoint, Inc. Sec. Litigation, 232 F.R.D. 534, 543 (E.D. Va. 2006). Defendants in various securities fraud cases have asserted that these "in-and-out" traders cannot have been damaged by any alleged fraud, as these traders have sold their shares before the

disclosure of the fraud, and the resulting drop in stock price. See BearingPoint, 232 F.R.D. at 543 ("defendants contend that in-and-out trading members of the proposed class who sold before the April 20, 2005 disclosure cannot prove loss causation because any damage that resulted from their purchase of BearingPoint shares at an inflated price during the class period was cancelled out by the sale of their shares at a similarly inflated price later in the class period."). In support of this assertion these defendants typically cite to Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1631 (2005) for the proposition that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss."

The courts in these cases must therefore determine "whether in-and-out traders could conceivably satisfy the requirement of loss causation, and [should] therefore [be] included in the proposed class." BearingPoint, 232 F.R.D. at 543. If these traders can demonstrate a loss, they should remain part of the class. Id. at 544. It is not impossible for "in-and-out" traders to make such a showing. "Tyco's argument for the immediate exclusion of class members who sold their stock before the first corrective disclosure alleged in the complaint is based on the faulty premise that loss causation must be pled with particularity. Disputes about loss causation turn primarily on questions of fact." Tyco, 236 F.R.D. at 71.

> And although in-and-out traders often have no associated damage because they purchased and sold at prices with the same artificial inflation, this is not always the case. In cases where, as here, there are multiple disclosures, in-and-out traders may well be able to show a loss. Moreover, it is also conceivable that the inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure, and thus in-and-out traders in this circumstance would be able to prove loss causation . . . In sum, because in-and-out traders may conceivably prove loss causation, they are appropriately counted as members of the proposed class.

BearingPoint, 232 F.R.D. at 544 (internal citations omitted). It is therefore premature for courts

to attempt to determine whether in-and-out traders have suffered losses at the class certification stage of the game. See id. Courts thus may properly include "in-and-out" traders as part of potential classes in securities fraud cases. See id.

## B. Plaintiffs' Motion for Class Certification

As the court has noted, Defendants do not dispute the general proposition that it is appropriate for the court to certify a class in this case. Plaintiffs satisfy the requirements of Rule 23(a). Plaintiffs submit, and Defendants do not dispute, that the average daily trading volume in Aon stock during the Class Period was 1.26 million shares, and that more than 280 securities firms and/or institutional investors owned Aon stock during the Class Period. The numerosity requirement of Rule 23(a) is therefore satisfied. See Fry, 136 F.R.D. at 630 (assertions regarding the number of shares traded can satisfy the numerosity requirement in securities fraud cases). Plaintiffs also satisfy the commonality and typicality requirements of Rule 23(a). Plaintiffs share the following common issues of law and fact with potential class members: (1) whether Defendants violated federal securities laws; (2) whether Defendants misrepresented the financial and operational status of Aon; (3) whether Defendants acted recklessly in concealing unlawful schemes, and misrepresenting and omitting material facts; (4) whether Aon's market price was artificially inflated during the Class Period due to Defendants' allegedly unlawful acts and omissions; (5) whether the members of the class sustained economic loss causally connected to Defendants' allegedly unlawful conduct and, if so; (6) what is the proper measure of damages? See Rosario, 963 F.2d at 1017-18. Plaintiffs also satisfy the adequacy of representation requirement of Rule 23(a). It is undisputed that the proposed class representatives do not have interests antagonistic to the class, and that their attorneys are competent to handle this case. See Scholes, 143 F.R.D. at 186.

In addition, Plaintiffs satisfy the requirements of Rule 23(b)(3). Common questions regarding Defendants' allegedly unlawful acts and omissions, and the class members' economic losses predominate. Should this case eventually go to trial, the court is convinced, and the parties do not dispute, that "the putative named plaintiffs can, through their individualized cases, offer proof on a class-wide basis." See Hyderi, 235 F.R.D. at 398. It is also clear that certifying this class is the superior way to resolve these disputes. "Judicial economy and efficiency" will be promoted by certifying this class, and resolving these matters in one suit. See Scholes, 143 F.R.D. at 189. In addition, the class members themselves will benefit from class certification.

> [C]lass actions are often the most fair and practical vehicle for plaintiffs' claims in securities fraud suits because those who have been injured are in a poor position to seek legal redress . . . [B]ecause individual claims might be small in monetary value, they might not be prosecuted on an individual basis due to the costs of litigation.

Brosious v. Children Place Retail Stores, 189 F.R.D. 138, 147 (D. N.J. 1999)

The only remaining issue before the court is therefore whether the class ought to include the so-called "in-and-out" traders: those individuals or entities who both bought and sold their Aon stock prior to the end of the Class Period. The court is persuaded by the Tyco and BearingPoint courts' reasoning: disputes about loss causation concern factual questions not appropriate at the class certification stage of the game. See Tyco, 236 F.R.D. at 71; BearingPoint, 232 F.R.D. at 544. The court is mindful of the Supreme Court's admonishment in Dura: "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." 125 S. Ct. at 1631. The court cannot conclusively determine, however, at this point in the litigation, that a certain group of potential class members can never prove loss causation. Plaintiffs have properly pled that their losses were caused by Defendants' allegedly

unlawful acts and omissions. The court therefore will include the "in-and-out" traders in the proposed class, but the court will limit the class to those persons or entities who were damaged by their acquisition of Aon stock during the Class Period.

### III. CONCLUSION

The court therefore certifies the following class in this case:

All persons or entities who purchased or otherwise acquired the Common Stock of Aon Corporation ("Aon") during the period beginning May 5, 2003 through October 13, 2004, and who were damaged thereby. Excluded from the class are: (i) Aon, (ii) Patrick G. Ryan, Michael D. O'Halleran, and David P.Bolger (collectively the "Individual Defendants"); (iii) members of the family of each Individual Defendant; (iv) any entity in which any Defendant has a controlling interest; (v) officers and directors of Aon; and (vi) the legal representatives, heirs, successors or assigns of any such excluded party.

The court designates the Monroe County Employees Retirement System, Teamsters Local 408 Pension Fund, Western Pennsylvania Electrical Employees Pension Fund, and Hawaii Reinforcing Iron Workers Pension Trust Fund as class representatives, and appoints Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Lasky & Rifkind, Ltd., and Vanoverbeke Michaud & Timmony, P.C., as class counsel. Pursuant to Rule 23(c)(2), the court directs Plaintiffs to file a draft of their proposed notice form on or before November 30, 2006. Defendants may file any objections to this proposed notice form on or before December 14, 2006.

IT IS SO ORDERED.

ENTER:

_[signature]_

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: November 17, 2006