**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID I. ROTH, on behalf of himself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | Case No. 04 C 6835 |
| v. | ) ) ) | Magistrate Judge Morton Denlow |
| **AON CORPORATION, PATRICK G. RYAN, MICHAEL D. O'HALLGRAN and DAVID P. BOLGER,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, on behalf of a class of investors who purchased Aon common stock, allege that Defendants misstated and failed to disclose to investors Aon's role in and reliance on contingent commission kickbacks and steering arrangements with insurers in violation of Sections 10(b) and 20 (a) of the Securities Exchange Act of 1934. This matter comes before the Court on Plaintiff's Motion to Compel the Production of Improperly Withheld Business Communication. For the reasons stated below, the Court denies Plaintiff's motion.

### I. BACKGROUND FACTS

Plaintiff filed this lawsuit on behalf of a class of investors who purchased Aon common stock during the period between May 5, 2003 through October 13, 2004. Plaintiff alleges that Defendants misled investors during this period as to Aon's role in and reliance

on contingent commission kickbacks and steering arrangements with insurers. Defendants deny Plaintiff's allegations.

Plaintiff brings this motion to compel production of two-page document consisting of a March 1, 2004 e-mail and attached memorandum (collectively the "Bolger e-mail") that Defendants "clawed back" following production. The memorandum portion of the document is from David Bolger ("Bolger"), Aon's then-Chief Financial Officer, to Patrick G. Ryan ("Ryan"), Aon's then-Chief Executive Officer, and to D. Cameron Findlay ("Findlay"), Aon's General Counsel, and provides an expanded draft of the "Compensation for Services" section of Aon's Form 10-K to be filed with the Securities Exchange Commission ("SEC").

The e-mail portion of the document attaches the memorandum, and requests that the recipients provide their thoughts on it. The e-mail is from Bolger to Sean O'Neill, Aon's head of investor relations; Richard Barry ("Barry"), Aon's Deputy General Counsel; Dan Hunger, Aon's Controller; and William Chromizky, an Aon employee in the Controller's division. According to Barry, he received the Bolger e-mail in his role as Deputy General Counsel in order to seek legal advice concerning the draft 10-K disclosure. Barry Aff. ¶¶ 6-8. The other employees were also working on the content of the 10-K filing. Barry Aff. ¶ 9. Barry reviews this information "primarily to permit me to offer legal advice concerning whether the content of the proposed disclosures are consistent with or required by the federal securities laws." Bolger Aff. ¶ 8.

## II. LEGAL STANDARD

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The essential elements for the creation and application of the attorney-client privilege are well-established: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Because the privilege withholds relevant information from the fact-finder "it applies only where necessary to achieve its purpose. "Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The party asserting the privilege bears the burden of establishing all elements of the privilege. *White*, 950 F.2d at 430. Documents that contain no request for legal advice, nor give legal advice, fall outside the scope of the privilege. *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 253 (N.D. Ill. 2000).

## III. DISCUSSION

Plaintiff contends the Bolger e-mail constitutes a business communication not protected by the attorney-client privilege. Plaintiff asserts that the Bolger e-mail seeks business, not legal, advice regarding the draft Form 10-K language. Plaintiff also argues that where both legal and non-legal review is sought, the document is not privileged, and the Bolger e-mail does not specifically state that it seeks legal advice.

Defendants respond that the Bolger e-mail was provided to counsel for the purpose of obtaining legal advice, and therefore the two documents are protected by the attorney-client privilege. Defendants argue that the Bolger e-mail involves a core legal issue, the scope of disclosure to the SEC pursuant to federal securities law, and contains information provided to counsel for the purpose of obtaining legal advice. Defendants further assert that the public availability of the Form 10-K final product does not invalidate the privilege of the earlier drafts submitted to counsel for review and comment. Finally, Defendants argue that the fact that non-lawyers received the Bolger e-mail does not destroy the privilege. Defendants point out that the non-attorney individuals copied on the Bolger e-mail were Aon employees who were directly responsible for the drafting and editing of the Form 10-K. The Court addresses each of these issues in turn.

A.      **Business Communications**

"In light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, 'constantly go to lawyers to find out how to obey the law.'" *Upjohn*, 449 U.S. at 392 (quoting Burnham, *The Attorney-Client Privilege in the Corporate Arena*, 24 Bus. Law. 901, 913 (1969)).  However, this does not mean that corporations have a blank check to keep hidden any document through consultation with counsel.  Indeed, "if an attorney is simply a 'mail drop' for the purposes of trying to create a screen against discovery, and the content of the document indicates it is neither work product nor a communication subject to the attorney-client privilege, the fact that a document is sent through an attorney cannot prevent its having to be produced." *In re Air Crash Disaster at Sioux City*, 133 F.R.D. 515, 520 (N.D. Ill. 1990); *see also B.F.G. of Illinois, Inc. v. Ameritech Corp.*, 2001 WL 1414468, at * 7 (N.D. Ill. Nov. 8, 2001) ("[I]t is clear that this document is nothing more than a business document given a veneer of privilege by routing it through in-house counsel.").  Furthermore, the attorney-client privilege protects disclosure of communications, but not the underlying facts by those who communicated with the attorney. *Upjohn*, 449 U.S. at 395.

However, there is certainly good reason to anticipate that corporations will consult with their attorneys over compliance with legally mandated disclosures.  In the case at hand, pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m or § 78o(d), publicly traded companies must submit reports on Form 10-K to the SEC annually.  United States Securities and Exchange Commission, Form 10-K, Annual Report

Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, General Instructions, SEC 1673 (02-08). The report on Form 10-K presents an overview of the company's business and financial condition and includes audited financial statements. *Id.;* United States Securities and Exchange Commission, Form 10-K, SEC 1673 (02-08). If a shareholder requests a company's Form 10-K, the company must provide a copy. 17 C.F.R. § 240.14a-3(b)(10).

Form 10-K requires extremely detailed financial, legal, and structural information pertaining to the company. The required disclosures range from its physical assets to submissions of matters for vote to security holders, from management's operations data and analysis to disclosures about market risk. Form 10-K also requires the disclosure of legal proceedings in which the company is involved. United States Securities and Exchange Commission, Form 10-K, SEC 1673 (02-08).

Aon's involvement of legal counsel in the drafting of Form 10-K, and in decision-making in preparation for its submission is therefore unsurprising. Consultation as to the scope of the provisions of the Act, as to language, and as to how best to legally comply with SEC regulations, for instance, are precisely the type of day-to-day guidance for which a corporation would likely rely on counsel. Form 10-K mandates the disclosure of extensive corporate information. The determination of what information should be disclosed for compliance is not merely a business operation, but a legal concern. The Court finds that the communications contained in the Bolger e-mail did reasonably seek legal advice.

**B.  The Attorney-Client Privilege Applies to Drafts**

The Seventh Circuit's test for determining the existence of attorney-client privilege, as adopted from Wigmore, is laid out above. No part of that eight-prong test excludes the privilege from drafts of documents that will one day become public. So long as the initial legal advice sought from an attorney in legally formulating the drafts is made in confidence and protected by the client as confidential information without waiver, there is no apparent reason why the drafts should cease to be privileged once the final product becomes public.

Indeed, most courts have found that even when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact. *In re Air Crash Disaster at Sioux City*, 133 F.R.D. at 518. Those cases that do not find that privilege is in effect as to these drafts, such as *JP Morgan* and *Christman*, do not significantly contemplate why this should be so. Indeed, they conflict openly with a prior case, *Ziemack*, that does find privilege in this area. *See In re JP Morgan Chase & Co. Sec. Litig.*, 2007 WL 236331, at *3 (N.D. Ill. Aug.13, 2007); *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 256-57 (N.D. Ill. 1999); *Ziemack v. Centel Corp.*, 1995 WL 314526, at *4 (N.D. Ill. May 18, 1995). Thus, unless the communication does not at the outset meet the elements of attorney-client privilege, then a draft of a document which becomes public record does not thereby lose that privilege.

## C. Non-lawyer Recipients

"[P]rivilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. In a corporate structure, there may be many individuals who must consult with one another so that all relevant information is known before making a legal decision. *Upjohn* specifically rejected the "control group test" that narrowly limits the individuals within a corporation who may be covered by privilege. *Id.* at 390-91.

In the case at hand, all of the non-lawyer individuals who were privy to the Bolger e-mail were employees of Aon. Each individual, including the CFO, CEO, Head of Investor Relations, Controller, and member of the Controller's division, was directly concerned with the matter of the Form 10-K disclosures. To disallow corporations the space to collectively discuss sensitive information with legal counsel would be to ignore the realities of large-scale corporate operation. For this reason, there is no doubt that the inclusion of these individuals in the e-mail correspondence did not destroy the attorney-client privilege.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel the production of improperly withheld business communication is denied.

**SO ORDERED THIS 8TH DAY OF JANUARY, 2008**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

| | |
|---|---|
| Leigh Lasky | Mark B. Blocker |
| Amelia S. Newton | Charles W. Douglas |
| Norman Rifkind | James W. Ducayet |
| Lasky & Rifkind, Ltd. | David F. Graham |
| 350 North LaSalle Street | Erin E. Kelly |
| Suite 1320 | Matthew B. Kilby |
| Chicago, IL 60610 | Erika L. Pfleger |
| | Courtney A. Rosen |
| Thomas Egler | Sidley Austin LLP |
| Tor Gronborg | One South Dearborn |
| Sarah R. Holloway | Chicago, IL 60603 |
| Jessica T. Shinnefield | |
| Debra J. Wyman | |
| Coughlin Stoia Geller Rudman & Robbins LLP | Counsel for Defendants |
| 655 West Broadway | |
| Suite 1900 | |
| San Diego, CA 92101 | |

Thomas C. Michaud
Michael J. Vanoverbeke
Vanoverbeke Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI 48201


Counsel for Plaintiffs